**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JASON S. CASLER,**

                                **Petitioner,**                    **5:04-CV-1157**
        **v.**                                                     **(NAM)**
                                                                   **Related Criminal Action**
**UNITED STATES OF AMERICA,**                                      **5:99-CR-0488**

                                **Respondent.**
_____

**APPEARANCES**                              **OF COUNSEL:**

**FOR THE PETITIONER:**

**JASON S. CASLER**
Petitioner _pro se_
**Last Known Address:**
09735-052
FCI Ray Brook
P.O. Box 9001
Ray Brook, NY 12977

**FOR THE RESPONDENT:**

**OFFICE OF THE UNITED**                     **RICHARD SOUTHWICK, Esq.**
**STATES ATTORNEY**                          Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

**NORMAN A. MORDUE, District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.      BACKGROUND[1]**

        On September 22, 1999, petitioner, _pro se_ Jason S. Casler and other individuals were

---

        [1]      The background information contained in this Memorandum-Decision and
Order is derived from the documents filed in the present civil action, _Casler v. United States_,
5:04-CV-1157 ("04-CV-1157"), as well as the related criminal matter, _United States v._
_Casler_, 5:99-CR-0488 ("99-CR-488").

indicted in the Northern District of New York by a federal grand jury.  *See* 99-CR-0488, Dkt. No. 1 ("Indictment").  In that accusatory instrument, Casler was charged with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of  21 U.S.C. § 846. *See* Indictment, Count 1.  Casler was also charged with possessing with the intent to distribute and distributing cocaine on January 11, 1999, March 22, 1999, May 13, 1999, June 2, 1999 and June 10, 1999.  *See* Indictment, Counts 2, 3, 5, 6 and 7, respectively.

On February 7, 2000, following negotiations between Casler's attorney and the Office of the United States Attorney for the Northern District of New York ("United States Attorney"), Casler entered into a plea and cooperation agreement whereby he agreed to plead guilty to the first count in the Indictment in satisfaction of all charges against him in that instrument.  99-CR-0488, Dkt. No. 34.  Casler thereafter appeared before this Court on February 17, 2000 and pleaded guilty to that charge, 99-CR-0488, Dkt. No. 38, after which this Court sentenced Casler to a term of imprisonment of thirty (30) months, to be followed by a term of supervised release of three (3) years.  99-CR-0488, Dkt. No. 85 at pp. 1-7.

On October 2, 2002, Casler was placed on supervised release.  99-CR-0488, Dkt. No. 93 at p. 1.  He was thereafter accused by an Officer for the Probation Department for the Northern District of New York of violating various conditions relating to that release.  *Id*.  On July 22, 2003, this Court determined that Casler had violated the terms of that program and accordingly modified the conditions of his supervised release by requiring him to reside in a community corrections center or other suitable facility for a period of six (6) months.  99-CR-0488, Dkt. No. 98.  On August 12, 2003, Casler pleaded guilty to again violating the terms of his supervised release, following which this Court sentenced Casler to a term of imprisonment of eight (8)

-2-

months, to be followed by a two (2) year term of supervised release.

On April 28, 2004, the Probation Department for the Northern District filed a petition which claimed that petitioner had once again violated the terms of his supervised release and which sought the revocation of Casler's participation in the supervised release program.  99-CR-0488, Dkt. No. 101.  On May 4, 2004, this Court conducted a hearing relating to that petition.  At that proceeding, Casler pleaded guilty to the claimed violation when he admitted to using cocaine and drinking alcohol to excess during the weekends of March 27, 2004 and April 2, 2004.  *See* Transcript of Supervised Release Revocation Hearing (5/4/04) (04-CV-1157, Dkt. No. 5) ("Revocation Tr.") at p. 3.  After this Court noted on the record Casler's poor ability to comply with the conditions of his supervised release, it determined that he was not a viable candidate for that program and accordingly ordered that he be committed to the Bureau of Prisons for the sixteen (16) months which remained on his sentence.  *Id.* at pp. 5-6, 8-9.

Casler filed the present Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 on October 4, 2004.  *See* 04-CV-1157, Dkt. No. 1.  In his motion, Casler alleges that the sentence imposed on him by this Court following his admitted violation of the terms of his supervised release exceeded the range of imprisonment authorized by the United States Sentencing Guidelines.  *See* Motion to Vacate at p. 5.

## II.    DISCUSSION

When this Court imposed the sentence of sixteen (16) months imprisonment on Casler for violating the terms of his supervised release on May 4, 2004, that sentence reflected the maximum term of imprisonment to which he was subject based upon his February, 2000 conspiracy conviction.  *See*, *e.g.*, Revocation Tr. at p. 9.  Thus, the last date on which Casler

-3-

could have been incarcerated for that crime occurred on or about September 4, 2005.  Therefore, in order to determine whether Casler was, in fact, released from prison since the filing of this action, this Court utilized the "Inmate Locator" search engine provided by the Federal Bureau of Prisons on its Internet web page.  That research revealed that on June 28, 2005, Casler was released from prison.[2]

    Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir. 2003); *Loeber v. Spargo*, No. 04CV1193, 2004 WL 2432484, at *1 (N.D.N.Y. Oct. 29, 2004) (Kahn, J.) (citing *Spencer*). Thus, where the issues presented by the party in an action are no longer "live," or the party lacks a legally cognizable interest in the outcome, the federal action is properly considered moot.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotations and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002); *see also United States v. Suleiman*, 208 F.3d 32, 36 (2d Cir. 2000) ("'[s]imply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'") (quoting  *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *Yekimoff v. New York State Div. of Parole*, 2003 WL 22305171, at *1 (S.D.N.Y. Oct. 8, 2003).[3]

---

    [2]    This information is available at: http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false&LastName=Casler&Middle=&FirstName=Jason&Race=U&Sex=U&Age=&x=21&y=8.  The Court notes that, as of the date of this Memorandum-Decision and Order, petitioner has not notified this Court of his current address, in violation of Rule 10.1(b)(2) of the Local Rules of Practice for the Northern District of New York.

    [3]    When a case becomes moot, the federal court is deprived of subject matter
(continued...)

The "case-or-controversy" requirement of Article III is typically satisfied in the context of federal habeas petitions challenging the validity of a conviction because the incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7; *see also Geraci v. Sheriff, Schoharie County Jail*, 2004 WL 437466, at *1-2 (N.D.N.Y. Feb. 20, 2004) (Sharpe, D.J.).  Moreover, a habeas petition challenging a criminal conviction is not necessarily moot when the petitioner is released from prison because collateral consequences of that conviction may still exist after an inmate's release. *See, e.g., Spencer*, 523 U.S. at 12 ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55 (1968)).  Once a litigant's sentence has expired, however, "some concrete and continuing injury other than the now-ended incarceration or parole – some 'collateral consequence' of the conviction – must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7 (quoting *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)).

The Supreme Court has long recognized that a challenge to a criminal conviction itself presents a justiciable case or controversy even after the expiration of the sentence that was imposed as a result of the conviction. *See Spencer*, 523 U.S. at 12 (citing *Sibron*, 392 U.S. at 55-56).  In the present case, however, Casler does not challenge his underlying criminal conviction or the sentence imposed on him following that conviction.  Rather, he only challenges

---

[3](...continued)
jurisdiction over the action.  *See Fox v. Board of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation and citation omitted).  Federal courts should consider *sua sponte* matters that touch upon the court's subject matter jurisdiction.  *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000)).

the fact that following the revocation hearing, this Court sentenced him to a term of sixteen (16) months imprisonment. *See*, *e.g.*, Motion to Vacate at ¶¶ 2, 4 (declaring that date of conviction challenged by Motion to Vacate occurred on May 4, 2004 and describing "nature of offense" challenged by petition as "violation of supervise[d] release").

In *Spencer*, the Supreme Court refused to extend the "presumption" of collateral consequences to the area of parole revocation and instead determined that a petitioner maintaining an action asserting such a challenge must establish ***actual*** collateral consequences in order to meet Article III's injury-in-fact requirement. *See Spencer*, 523 U.S. at 12 (citing *Lane v. Williams*, 455 U.S. 624 (1982)).[4]  In *United States v. Probber*, 170 F.3d 345 (2d Cir. 1999), the Second Circuit extended the Supreme Court's holding in *Spencer* and held that federal courts cannot properly presume collateral consequences where a party challenging the revocation of his or her supervised release has fully served the term of re-imprisonment challenged by the petition. *See Probber*, 170 F.3d at 347-49 (dismissing as moot appellant's challenge to revocation of supervised release).

The salient facts critical to determining whether the Motion to Vacate filed by Casler is now moot are virtually indistinguishable from those before the *Probber* court.  In *Probber*, as in the present action, the inmate did not challenge the validity of the underlying conviction but only the judicial determination relating to the revocation of the party's supervised release. *Compare Probber*, 170 F.3d at 347 *with* Motion to Vacate at ¶ 2-4.  In *Probber*, the appellant's term of re-

---

[4]       The *Spencer* Court observed that "[t]he reincarceration that [petitioner] incurred as a result of [the revocation of his parole] is now over, and cannot be undone. Subsistence of the suit requires, therefore, that continuing 'collateral consequences' of the parole revocation be either proved or presumed." *Spencer*, 523 U.S. at 8.

imprisonment had expired and he had been released from prison before a judicial resolution of his action had been accomplished. *Probber*, 170 F.3d at 347. Similarly, in the present action, Casler was released by the Bureau of Prisons on June 28, 2005, prior to this Court's final determination relating to Casler's Motion to Vacate. The *Probber* court found "no basis for adopting a presumption of collateral consequences" with respect to Probber's challenge to the revocation of his supervised release. Therefore, this Court likewise cannot properly presume that Casler will be subject to collateral consequences attributable to the revocation of his supervised release.

Casler "bears the burden of demonstrating collateral consequences sufficient to meet Article III's case-or-controversy requirement." *See Probber*, 170 F.3d at 348. In the present action, petitioner has not demonstrated that he will suffer any collateral consequences due to the fact that he was found guilty of violating the terms of his supervised release on May 4, 2004. Nor can this Court envision any collateral consequences to which Casler may be subject as a result of that revocation sufficient to satisfy Article III's case-or-controversy requirement.

Since: i) this action does not attack the underlying criminal conviction that resulted in the sentence imposed on Casler; and ii) Casler has fully served the term of imprisonment imposed on him as a consequence of the revocation of his supervised release, this Court finds that this action must be dismissed as moot. *See, e.g., Spencer*, 523 U.S. at 14-18; *Probber*, 170 F.3d at 347-49; *see also Hicks v. Lacy*, Nos. 99Civ.4523 & 00Civ.2307, 2003 WL 22510323, at *4 (S.D.N.Y. Nov. 4, 2003) (dismissing habeas petition challenging revocation of parole where petitioner was released from prison after fully serving sentence).

**WHEREFORE**, based upon the foregoing, it is hereby

**ORDERED**, that Casler's Motion to Vacate (filed in 04-CV-1157, Dkt. No. 1) is

**DENIED and DISMISSED** as moot, and it is further

      **ORDERED**, that the Clerk serve a copy of this Order on the parties by regular or electronic mail.

**IT IS SO ORDERED.**

Dated: November 17, 2005
        Syracuse, New York

Norman A. Mordue
U.S. District Judge